IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

NANCY SEARLS                    )
and CRAIG SEARLS,               )
                                )
     Plaintiffs,                )
                                )
          v.                    )     1:14cv578 (JCC/TCB)
                                )
SANDIA CORPORATION              )
and JANE FARRIS,                )
                                )
     Defendants.                )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Sandia
Corporation ("Sandia") and Defendant Jane Farris' ("Farris")
(collectively "Defendants") Motion to Dismiss Plaintiffs, Ms.
Nancy Searls and Mr. Craig Searls' (collectively "Plaintiffs"),
First Amended Complaint, [Dkt. 20], and Defendants' Motion to
Strike Plaintiffs' Jury Demand, [Dkt. 23].  For the reasons set
forth below, the Court will grant the Motion to Dismiss in part,
and grant the Motion to Strike the Jury Demand.

**I. Background[1]**

This case arises from Plaintiffs' prior employment

_____

[1] In ruling on a motion to dismiss, the "court accepts all well-pled facts as
true and construes these facts in the light most favorable to the
plaintiff[s]." Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d
250, 255 (4th Cir. 2009) (citations omitted).  Accordingly, the following
facts, as pled in the Plaintiffs' First Amended Complaint, are accepted as
true for purposes of this motion to dismiss.  See Erickson v. Parus, 551 U.S.
89, 94 (2007).

with Sandia, which first began on April 13, 1981.  (Am. Compl.

[Dkt. 18] ¶¶ 9, 10.)   In October of 1997, Sandia offered

Plaintiffs a Special Leave of Absence ("SLOA") for a period of

two years, to work for the Central Intelligence Agency ("CIA")

"as full-time employees while maintaining their connection to

Sandia."  (Id. ¶ 11.)  Under the SLOA, Plaintiffs employment at

Sandia would be inactive, but Plaintiffs would continue to earn

time of service credit with Sandia for purposes of future

pension benefit calculations, so long as Plaintiffs returned to

Sandia after the SLOA expired.  (Id. ¶¶ 11-12; see also id., Ex.

C [Dkt. 18-3] at 2-5.)[2]  Plaintiffs allege that this rare[3]

pension benefit was conditioned on their return to full-time

employment at Sandia, so that Sandia could benefit from "the

Plaintiffs' considerable experience working as federal employees

in areas critical to Sandia's operations."  (Am. Compl. ¶¶ 11,

13.)  After the initial SLOA period began in October of 1997,

Sandia renewed the SLOA agreement with Plaintiffs three times,

in October of 1999, October of 2001, and October of 2003.  (Id.

¶ 15.)  After eight years of SLOA full-time employment with the

CIA, Plaintiffs returned to employment with Sandia on October

10, 2005.  (Id. ¶ 16.)

---

[2] Sandia also continued to provide life insurance coverage during the first
year of the SLOA.  Otherwise, Plaintiffs' salary and other benefits were
administered by the CIA.  (Id.)
[3] It is alleged that Sandia granted less than 100 total SLOAs under similar
terms and conditions.  (Am. Compl. ¶ 13.)

In November of 2006, Plaintiffs retired from employment with Sandia.[4] (Id. ¶¶ 17, 21.) Immediately thereafter, Plaintiffs started receiving monthly pension payments from Sandia, which initially "reflected the inclusion of the Searls' federal service in their computed benefit" for the eight years of SLOA. (Id. ¶ 18.) Almost six years after the pension benefit payments began, on April 26, 2012, Plaintiffs received a letter from Defendant Jane Farris, Sandia's Senior Manager of the Pension Fund & Savings Plans, and were advised that after "a review of the pension treatment of employees who had been on SLOA," their monthly pension payments would be decreased pursuant to the "non-duplication" provision in Sandia's Retirement Income Plan (the "Plan"). (Id. ¶¶ 19-21, Ex. A [Dkt. 18-1] at 2, 5.)

Sandia's pension payments to Ms. Nancy Searls were immediately decreased by 31 percent, and pension payments to Mr. Craig Searls would be reduced once he retired from the federal government. (Am. Compl. ¶¶ 20-21.) Plaintiffs sought timely review of Sandia's decision through Sandia's internal employee benefit appeals system. (Id. ¶ 22.) On November 21, 2012, Sandia's Employment Benefit Committee ("EBC") denied Plaintiffs' initial appeal, (id. ¶ 23.), and on May 22, 2013, Sandia's

---

[4] Ms. Nancy Searls is fully retired, while Mr. Craig Searls is still employed by the federal government.

Employee Benefits Claim Review Committee ("EBCRC") issued Sandia's final decision denying Plaintiffs' claims. (Id. ¶¶ 24-25, Ex. B [Dkt. 18-2] at 2-11.)

Plaintiffs filed their original complaint in this matter on May 21, 2014. [Dkt. 1] Plaintiffs timely amended their complaint as a matter of right under Rule 15(a) of the Federal Rules of Civil Procedure by filing the First Amended Complaint on July 3, 2014. In the First Amended Complaint, Plaintiffs invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and raise four claims under Virginia law – breach of contract, unjust enrichment, fraudulent inducement, and constructive fraud – and one claim under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Am. Compl. ¶¶ 26-62.)

Defendants move to dismiss this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to strike the Plaintiffs' jury demand. Defendants argue that Plaintiffs' four state law claims are preempted by ERISA, and that the one ERISA claim fails to state a claim for relief. In response, Plaintiffs contend the state law claims should survive as not related to an employment benefit plan, and ask the Court to deny both motions.

The motions have been fully briefed and argued, and are now before the Court.

## II. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [it] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012) (citations and internal quotation marks omitted). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true, and must construe all allegations in favor of the plaintiffs. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). However, the court need not accept as true legal conclusions disguised as factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679-81 (2009). The plaintiffs' facts must "be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Extrinsic evidence is not typically considered when determining the sufficiency of a complaint, although the court "may properly take judicial notice of matters of public record . . . [and] may also consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

### III. Analysis

A.  Motion to Dismiss

Defendants move to dismiss Plaintiffs' First Amended Complaint for failure to state a claim.  Plaintiffs' four claims under Virginia law, and one claim under ERISA, arise from Plaintiffs' eight-year SLOA period, and the effect of that period on Sandia's pension payments to Plaintiffs.  After Plaintiffs both retired from Sandia in November of 2006, Sandia's pension benefit payments to Plaintiffs reflected a time of service credit that included the SLOA period with the CIA.  After April 26, 2012, however, Sandia's pension payments to Plaintiffs decreased, because the SLOA period was now excluded from their time of service credit calculation.  Sandia decreased Plaintiffs' time of service credit in accordance with section six of the Plan, the "non-duplication provision."  Under that provision, "no person shall accrue benefits under this Plan if at the time such benefits are accrued he is entitled to accrued benefits under another employer's pension plan for the same service."  (Am. Compl. Ex. B at 3.)

After Plaintiffs exhausted Sandia's internal appeals process challenging Sandia's application of the non-duplication provision, in its final decision, the EBCRC explained that Sandia's non-duplication provision applied to Plaintiffs during the SLOA period.  The EBCRC noted, however, that Sandia amended the Plan so that it now "provides a limited exception for [Plaintiffs and two] similarly situated individuals."  (Am.

Compl. Ex. B at 5, 9-10.)  The Plan "amendment allows
[Plaintiffs] to receive a benefit under the Plan for the time
that [they] spent on SLOA, which Plan benefit amount [will
be/is] reduced by the amount of your Federal Employees
Retirement Service benefit that is attributable solely to your
SLOA service."  (Id. at 5, 10.)  In other words, Sandia
specifically tailored an amendment to Plaintiffs and two other
former employees so they would receive a total benefit
equivalent to the expected benefit under the Plan had Plaintiffs
not taken the SLOA.  The EBCRC described this as "an equitable
solution."  (Id.)  Plaintiffs argue they are entitled to a full
pension benefit from Sandia, including the eight years of SLOA,
plus a full pension benefit from the federal government.

     Thus, Plaintiffs initiated this matter, bringing four
causes of action under Virginia law "for legal and equitable
relief for breach of contract, unjust enrichment and fraud."
(Id. ¶ 1.)  Even though "Plaintiffs submit that the Employee
Retirement Income Security Act of 1974 (ERISA) has no relevance
or bearing on their claims and that their state-law and common
law claims are not preempted," Plaintiffs also brought one claim
under ERISA § 502(a)(3).  (Id.)  Defendants argue that the
Plaintiffs' state law claims should be dismissed as preempted by
ERISA because those claims "relate to" an employment benefit
plan subject to federal regulation, and that the ERISA claim

should be dismissed for failure to state a claim.  (See Defs.'
Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") [Dkt. 21].)
The Court will grant the motion in part.

### 1. Claims under Virginia law

Defendants argue that Plaintiffs' four causes of
action under Virginia law are preempted by ERISA and should be
dismissed.  (Defs.' Mem. at 6-19.)  Specifically, Defendants
contend ERISA § 514(a) preempts Plaintiffs' state law claims
that "relate to" an ERISA plan, (id. at 12-15.), and that ERISA
§ 502(a) completely preempts Plaintiffs' state law causes of
action, because those claims "duplicate[], supplement[], or
supplant[] the ERISA civil enforcement remedy."  (Id. at 16-19.)
In opposition, Plaintiffs argue that "this case is not about
pension benefits," and that Defendants "are attempting to cloak
their payments to the plaintiffs as pension benefits," when
really, the Amended Complaint alleges "a fraudulent scheme by
which Sandia used promises, including those of enhanced
benefits, to induce Nancy and Craig Searls to return to the
company after an eight-year period of government service."
(Pls.' Opp'n to Defs.' Mot. to Dismiss Am. Compl. and to Strike
Jury Demand ("Pls.' Opp'n") [Dkt. 30] at 2 (emphasis in
original).)

By enacting ERISA, Congress "meant to establish
pension plan regulation as exclusively a federal concern."

Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981) (referring to section 514(a), known as ERISA's express preemption provision).  ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to federal regulation]."  ERISA § 514(a), 29 U.S.C. § 1144(a).  Courts have long emphasized the broad reach of ERISA preemption.  See FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) ("Congress used the words 'relate to' in § 514(a) [the pre-emption clause] in their broad sense.") (quoting Shaw v. Delta Air Lines, 463 U.S. 85, 98 (1983) (internal quotations omitted)); see also Griggs v. E.I. Dupont De Nemours & Co., 237 F.3d 371, 377 (4th Cir. 2001) ("ERISA's broadly-phrased preemption clause provides that ERISA's provisions 'supersede any and all State laws insofar as they may now or here after relate to any employee benefit plan.") (quoting ERISA § 514(a)).  The central issue presented in this case is whether Plaintiffs' four causes of action under Virginia law "relate to" an employee benefit plan.

"A state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Griggs, 237 F.3d at 377 (quoting Shaw, 463 U.S. at 96-97) (internal quotations omitted).  In construing the second prong of this standard, in "reference to such a plan," the Supreme Court has recognized that "a common-

law cause of action premised on the existence of an ERISA plan .

. . [will be preempted by ERISA] where the existence of ERISA

plans is essential to the law's operation." Cal. Div. of Labor

Standards Enforcement v. Dillingham Constr., N.A., Inc., 519

U.S. 316, 324 (1997) (citations omitted); see also Griggs, 327

F.3d at 378 ("[I]n appropriate circumstances, state common law

claims fall within the category of state laws subject to ERISA

preemption.") (citations omitted).  While some state common law

claims "may affect employee benefit plans in too tenuous,

remote, or peripheral a manner to warrant a finding that the law

'relates to' the plan . . . as long as the nexus between the

state law and the employee benefit plan is not too tangential,"

the Court may properly find that ERISA preemption bars the

claim.  Griggs, 237 F.3d at 378 (quoting Shaw, 463 U.S. at 100

n.21).  Stated differently, "[w]hen a cause of action under

state law is 'premised on' the existence of an employee benefit

plan so that 'in order to prevail, a plaintiff must plead, and

the court must find, that an ERISA plan exists,' ERISA

preemption will apply."  Griggs, 237 F.3d at 378 (quoting

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990)).

    Here, the Court finds that Plaintiffs' four causes of

action under Virginia law are "premised on the existence" of

Sandia's employee benefit plan,[5] and therefore, the Court will dismiss the claims as preempted by ERISA. <u>Griggs</u>, 237 F.3d at 378. Without the Plan, Plaintiffs would be unable to state a claim for relief under Virginia law. Indeed, the existence of the Plan is essential to each of Plaintiffs' four state common law causes of action, and Plaintiffs explicitly refer to the Plan throughout the First Amended Complaint, when claiming an entitlement to the amount of pension payments owed to them under the Plan for the SLOA period. (<u>See</u>, <u>e.g.</u>, Am. Compl. ¶ 8 ("The Plaintiffs bring this action to recover damages incurred by the breach of Sandia's promises regarding <u>entitlement to pension benefits</u> . . . ."); ¶ 12 ("The term 'special' was significant in that the SLOA allowed Nancy and Craig Searls to return to their Sandia employment <u>without losing any future pension benefits</u> . . . [and] that the time spent on their SLOA would be included in their time of service to Sandia <u>in computing their pension benefits upon their retirement dates</u>."); ¶ 18 ("Under the terms of their employment and their SLOA agreement with the Plaintiffs, Sandia began <u>monthly pension payments</u> . . . ."); ¶ 21 ("Sandia notified Craig Searls that it would reduce <u>his</u>

---

[5] As a threshold matter, the parties agree that Sandia's Plan is an "employee benefit plan" as defined under ERISA. <u>See</u> ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). In their opposition, Plaintiffs contest whether these "enhanced payments" were intended to provide retirement income as defined by ERISA, and instead argue that the payments were promised solely in return for Plaintiffs promise to return to employment at Sandia. (Pls.' Opp'n at 3-4.) But neither party contests the underlying Plan is within the purview of ERISA.

monthly pension benefits when he retired from the federal
government . . . .") (emphasis added).)  Moreover, Plaintiffs
ask for monetary damages in the amount of pension benefits
payable under the Plan for the SLOA period.  (See Am. Compl. ¶¶
29, 30, 46, 47, 51, 52; see also id. at 11-12.)

The Fourth Circuit has already held that "ERISA
preempts state common law claims of fraudulent or negligent
misrepresentation when the false representations concern the
existence or extent of benefits under an employee benefit plan."
Griggs, 237 F.3d at 378 (citations omitted).  Here, the breach
of contract, unjust enrichment, fraudulent inducement, and
constructive fraud causes of action all concern the existence or
extent of Plaintiffs' pension benefits under Sandia's Plan.

First, Plaintiffs claim "Sandia breached [the SLOA]
agreements in its letters dated May 22, 2013, to Nancy and Craig
Searls, in which Sandia advised Plaintiffs that Sandia would not
honor its promises, letters of commitment and agreements
relating to crediting service performed under the SLOA."  (Am.
Compl. ¶ 28.)  Sandia's alleged promises that relate to
crediting Plaintiffs' time of service to Sandia during the SLOA
period in turn relate to the calculation of Plaintiffs' pension
benefit payments, which is ultimately governed and determined by
the Plan.  Therefore, the Court finds that the breach of

contract claim concerns the existence or extent of benefits under Sandia's Plan and is preempted by ERISA.

Second, Plaintiffs claim Sandia was unjustly enriched when Plaintiffs returned to employment at Sandia and retained the benefit of Plaintiffs' CIA experience without paying Plaintiffs the additional pension benefit for the SLOA period. (Am. Compl. ¶¶ 33-35.)  Plaintiffs' unjust enrichment claim depends on Sandia's alleged failure to pay promised pension benefits in exchange for Plaintiffs' return to employment at Sandia.  Again, because the unjust enrichment claim ultimately concerns the extent of Plaintiffs' pension benefits under Sandia's Plan, this claim is also preempted by ERISA.

Third, Plaintiffs claim that Sandia fraudulently induced Plaintiffs to return to employment with Sandia after the expiration of the SLOA with the CIA by making materially false promises "regarding their time-in-service computations and the resulting pension benefits." (Am. Compl. ¶ 40.)  Plaintiffs additionally argue that Defendants' preemption arguments fail to "account for relocation expense losses" related to Plaintiffs return to employment with Sandia. (Pls.' Opp'n at 7.)  But the fraudulent inducement claim is premised on Sandia's allegedly materially false statements regarding time of service credits and the resulting pension benefits.  And the substance of Plaintiffs' claim and associated loss directly relates to

Plaintiffs' expected pension benefit payment.  Therefore, the
fraudulent inducement claim also concerns the extent of
Plaintiffs' pension benefits and is preempted by ERISA.

Fourth, Plaintiffs claim that Sandia negligently made
statements "regarding time-in-service credit for work performed
during the SLOA," which constitutes constructive fraud.  (Am.
Compl. ¶ 50.)  Again, for the same reasons discussed under the
previous three causes of action, the constructive fraud cause of
action concerns the extent or calculation of Plaintiffs' pension
benefit payments under Sandia's Plan and is therefore preempted
by ERISA.

Plaintiffs attempt to distinguish their state common
law causes of action from claims that relate to an employee
benefit plan by arguing that Sandia engaged in a fraudulent
scheme to induce Plaintiffs to return to Sandia after the SLOA
period.  (Pls.' Opp'n at 2.)  Any alleged fraudulent scheme was
premised on the promise of additional time of service credit and
additional pension benefit payments under Sandia's Plan.  These
claims are clearly preempted by ERISA.  Overall, in determining
whether ERISA preemptions applies, the Court looks "more closely
at the factual nature of [the] claim than any state law label .
. . applie[d] to that claim."  Griggs, 237 F.3d at 379.  It is
readily apparent from the face of Plaintiffs' First Amended
Complaint that all four state common law claims "have a

sufficient connection with or reference to [Sandia's] pension plan to warrant preemption." Id. (quoting Shaw, 463 U.S. at 97). Accordingly, the Court will grant Defendants' motion to dismiss as to Plaintiffs' four causes of action under Virginia law and dismiss those claims as preempted by ERISA § 514(a).

"Alternatively, a state law claim is preempted when 'it conflicts directly with an ERISA cause of action.'" Griggs, 237 F.3d at 378 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990); Powell v. Chesapeake & Potomac Tel. Co. of Va., 780 F.2d 419, 422 (4th Cir. 1985) ("To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law.")). Claims brought under state law are preempted under ERISA § 502(a) where the state law claim "duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . ." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004). For application of preemption under ERISA § 502(a):

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must fall within the scope of an ERISA provision that it can enforce via § 502(a); and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan.

<u>Sonoco Prods. Co. v. Physicians Health Plan, Inc.</u>, 338 F.3d 366, 372 (4th Cir. 2003) (citations and internal quotations omitted). The Court finds that in the alternative, Plaintiffs' state law claims are also preempted by ERISA § 502(a), 29 U.S.C. § 1132(a).

First, Plaintiffs have standing under § 502(a) to pursue this claim.

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . [or] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

ERISA §§ 502(a)(1)(B), (a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3). In the First Amended Complaint, Plaintiffs allege they were previously full-time Sandia employees who are entitled to pension benefit payments under the Plan. (Am. Compl. ¶¶ 9-10, 17-18.) Accordingly, they have standing under ERISA § 502(a) to pursue a claim regarding such benefits under the Plan. Second, Plaintiffs claim falls within ERISA §§ 502(a)(1)(B) or (a)(3)(B). Notably, Plaintiffs brought count five under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), seeking equitable relief. Even though Plaintiffs baldly assert that ERISA "has no

relevance or bearing on their claims," Plaintiffs explicitly brought a claim pursuant to ERISA, and challenge Sandia's actions under the terms of the Plan, as discussed more fully above.  Accordingly, Plaintiffs' claim falls within the scope of ERISA's enforcement provision.  Lastly, the Court would not be able to resolve Plaintiffs' claim without interpreting or examining the Plan at issue.  Throughout the Amended Complaint, Plaintiffs reference time of service credit and resulting pension benefit payments under the Plan.  Sandia's internal employee benefit appeals process required an interpretation of the Plan's non-duplication provision.  Thus, alternatively, Plaintiffs' state law claims are preempted by ERISA § 502(a), which provides an alternate mechanism to enforce certain provisions of the Plan, or to challenge Sandia's actions under the Plan.

## 2. ERISA Claim

Lastly, Defendants ask the Court to dismiss Plaintiffs' claim for equitable relief under ERISA § 502(a)(3)(B), arguing that Plaintiffs do not sufficiently allege that Ms. Farris or Sandia are plan fiduciaries, or that Plaintiffs did not sufficiently allege a breach of any fiduciary duty under the Plan.  (Defs.' Mem. at 20-25 (citing Moon v. MWX Techs., Inc., No. 13-1888, 2014 WL 2958804, at *8 (4th Cir. July 2, 2014) (holding the threshold inquiry is whether plaintiffs

have sufficiently alleged a breach of fiduciary duty under the employee benefit plan)).)  Plaintiffs assert that Sandia and Farris breached their fiduciary duty under the Plan when they decreased Plaintiffs' pension benefit amount, and ask the Court to prevent Defendants from denying Plaintiffs their bargained for time of service credit for the period of the SLOA and to restore their pension benefits through full restitution.  (Am. Compl. ¶¶ 55-62.)  The issue before the Court is whether Plaintiffs sufficiently alleged that Defendant Farris and Defendant Sandia are fiduciaries under the Plan, and if so, whether Plaintiffs sufficiently alleged that Defendants breached their fiduciary duty.

Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a "fiduciary" with respect to an employee benefit plan

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Id.  The Fourth Circuit has described ERISA's definition of a plan fiduciary as "functional."  See Moon, 2014 WL 2958804, at *5 ("Indeed, because the definition of ERISA fiduciary is

18

couched in terms of functional control and authority over the plan, we must examine the conduct at issue when determining whether an individual is an ERISA fiduciary.") (quoting Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 343 (4th Cir. 2007) (internal quotations omitted)).  Thus, on a motion to dismiss pursuant to Rule 12(b)(6), the Court examines the sufficiency of allegations in the complaint with regard to the fiduciary's status, and specifically, whether it is alleged that the individual acted with functional control, discretion, and authority over the employee benefit plan.  See Moon, 2014 WL 2958804, at *5 (quoting Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1101-02 (9th Cir. 2004) (stating "an individual or entity can still be found liable as a 'de facto' fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite 'discretionary control' over the plan management and administration.")).  However, "[s]imply because an employer is an ERISA plan sponsor does not automatically convert the employer into a plan fiduciary." Moon, 2014 WL 2958804, at *5 (citing Beck v. PACE Int'l Union, 551 U.S. 96, 101 (2007)).  The thrust of the inquiry is whether Plaintiffs sufficiently alleged that the fiduciary exercised a requisite level of control over the Plan and its administration.

Plaintiffs initiated this action against Sandia "in its capacity as a corporate entity and in its capacity as a fiduciary," and against Ms. Farris "in her capacity as a fiduciary with respect to the Sandia [Plan]."  (Am. Compl. ¶¶ 6-7.)  Under the ERISA claim in count five, Plaintiffs allege that under the 2001 version of the Plan, "[t]he company shall be the Plan Administrator, the Sponsor and the Named Fiduciary of the Plan as those terms are defined in ERISA."  (Am. Compl. ¶ 55, n.1.)  Plaintiffs allege that Ms. Farris is also a fiduciary under the Plan because she sent Plaintiffs the initial notice regarding the exclusion of the SLOA time of service credit and the subsequent decrease in Plaintiffs' pension benefit payments. (Id. ¶¶ 56-58.)  Plaintiffs also claim that both Sandia and Ms. Farris "breached their fiduciary duties to Nancy and Craig Searls by ignoring the plain meaning of the 2001 [Plan]," when Plaintiffs' monthly pension benefit payments were reduced, in violation of their previous agreement with Sandia.  (Id. ¶¶ 59-62.)  Even when construing all allegations in favor of Plaintiffs as the Court is required to do,  see Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), the Court finds Plaintiffs fail to allege sufficient facts to state a claim against Ms. Farris as a fiduciary under the Plan.  Conversely, the Court finds that Plaintiffs pled sufficient facts to

establish Sandia's fiduciary status, and therefore, the claim as to Sandia will not be dismissed.

First, specifically as to Sandia, Plaintiffs allege that Sandia is the named fiduciary of the Plan, as explicitly set forth in the 2001 Plan.  (Am. Compl. ¶ 55, n.1 ("The Company shall be the Plan Administrator, the Sponsor and the <u>Named Fiduciary of the Plan</u> as those terms are defined in ERISA.") (emphasis added).)  As the named fiduciary of the Plan, Plaintiffs also allege that Sandia breached its fiduciary duty when it excluded time of service credits and decreased Plaintiffs' pension payments.  (<u>Id.</u> ¶ 59.)  Plaintiffs go on to ask the Court to prevent "Sandia and its plan administrator" from denying Plaintiffs the time of service credit and resulting pension benefits.  (<u>Id.</u> ¶ 62.)  It is also alleged that Sandia tailored an amendment to the Plan for Plaintiffs and two other employees as an "equitable solution."  (Am. Compl. Ex. B at 5, 10.)  These allegations, when construed in a light most favorable to Plaintiffs, support the theory that Sandia had functional control and management over the Plan.  Thus, the Amended Complaint states a claim for relief against Sandia under ERISA § 502(a)(3)(B).  The allegations as to Ms. Farris' status as a fiduciary, however, are wholly insufficient and the claim against Ms. Farris will be dismissed.

Plaintiffs fail to allege any facts that show Ms. Farris had functional control and authority over management of the Plan.  <u>Moon</u>, 2014 WL 2958804, at *5 ("[W]e must examine the conduct at issue when determining whether an individual is an ERISA fiduciary.") (citation and internal quotations omitted). Plaintiffs rely heavily on the letter Ms. Farris sent to Plaintiffs in an attempt to show that she acted in some fiduciary capacity.  (<u>See</u> Am. Compl. ¶¶ 56-57 ("Defendant Jane Farris informed the Plaintiffs that Sandia would no longer honor its promises and commitments regarding Sandia's SLOA agreements . . . . Defendant Jane Farris reduced monthly payments to Nancy Searls by 31 percent and informed Craig Searls that his monthly payments would be reduced upon his retir[e]ment from federal service.").)  But the letter, attached as Exhibit A to the Amended Complaint, was sent by Ms. Farris to notify Plaintiffs of a "proposed resolution" and that "[i]n the interim," their monthly pension benefit payments would decrease to reflect a time of service credit that excluded the SLOA period.  (Am. Compl. Ex. A. at 2.)  The letter also noted that "<u>Sandia</u>[, not Ms. Farris,] was seeking to remedy the situation to implement <u>Sandia's</u> intent that no employee should suffer a decrement nor a windfall to his/her overall pension position," but that they need to first "obtain approval for the proposed amendment to the Plan."  (<u>Id.</u> (emphasis added).)  Moreover, Ms. Farris started

the letter "requesting [Plaintiffs] assistance" concerning additional information about their pension benefits with the federal government. (Id.) Nothing in the letter suggests that Ms. Farris exercised any discretion or control over the Plan, or that she unilaterally made the decision to reduce Plaintiffs' benefits. Instead, Ms. Farris was simply notifying Plaintiffs of a change in pension benefit payments. In the Amended Complaint, Plaintiffs claim "Defendant Jane Farris reduced monthly payments" to Plaintiffs, (Am. Compl. ¶ 56.), but this conclusion is without any factual support.

Lastly, in another attempt to support the conclusion that Ms. Farris acted in a fiduciary role, Plaintiffs attach a federal tax form to their opposition brief which was electronically signed and filed by Ms. Farris as "the name of the individual signing as plan administrator." (Pls.' Opp'n Ex. A "Form 5500 – Annual Return/Report of Employee Benefit Plan" at 2.) Again, however, this does not show that Ms. Farris had any functional authority or discretionary control over the Plan. See 29 C.F.R. § 2509.75-8 ("[A] person who performs purely ministerial functions . . . is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with

respect to any money or other property of the plan and has no authority or responsibility to do so."). Accordingly, the Court will grant the motion to dismiss the ERISA claim, but only as to Ms. Farris; the motion to dismiss the ERISA claim is denied with respect to Sandia.

To conclude, the motion to dismiss is granted as to Plaintiffs' state common law claims and the ERISA claim against Ms. Farris. Thus, only the ERISA claim against Sandia remains.

### B. Motion to Strike Jury Demand

In the remaining ERISA claim, Plaintiffs seek equitable relief under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). (See Am. Compl. at 9-11.) Plaintiffs also request a jury trial on all issues. (Id. at 12.) Defendants filed a motion to strike Plaintiffs' jury demand under Phelps v. C.T. Enters., Inc., 394 F.3d 213, 222 (4th Cir. 2005). In Phelps, the Fourth Circuit expressly held that ERISA § 502(a)(3)(B) provides for only equitable remedies, and thus, "this section of ERISA likewise entails no right to jury trial." Id. (citations omitted). Plaintiffs contend they are seeking legal remedies in the form of monetary damages, in addition to the equitable relief such as estoppel and restitution. (Pls.' Opp'n at 12-14.) However, as discussed above, the Court will dismiss Plaintiffs' claims under Virginia law because they are preempted by ERISA. Therefore, only Plaintiffs' equitable claim

against Sandia brought under ERISA remains.   The Fourth Circuit
has clearly spoken on this issue.   Accordingly, the Court will
strike Plaintiffs' jury demand as to the ERISA claim in count
five, which seeks purely equitable relief under ERISA §
502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B).   Phelps, 394 F.2d at
222.

### IV. Conclusion

For the foregoing reasons, the Court will grant
Defendants' motion to dismiss as to Plaintiffs' claims under
Virginia law, and as to the ERISA claim against Ms. Farris.   The
Court will also grant the motion to strike the jury demand as to
the Plaintiffs' equitable claim for relief under ERISA.

An appropriate Order will issue.


|                        | /s/                                      |
|------------------------|------------------------------------------|
| September 25, 2014     | James C. Cacheris                        |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE       |