IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| NANCY SEARLS and CRAIG SEARLS, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | 1:14cv578 (JCC/TCB) |
| SANDIA CORPORATION, ) ) | |
| Defendant. ) | |

# **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Sandia Corporation's ("Sandia's") Motion to Dismiss Ms. Nancy Searls and Mr. Craig Searls's (collectively "Plaintiffs") Second Amended Complaint [Dkt. 37]. For the reasons set forth below, the Court will deny the motion.

## I. Background[1]

A. Procedural Background

On September 25, 2014, the Court granted in part Sandia's motion to dismiss Plaintiffs' first amended complaint. (See Mem. Op. [Dkt. 34]; Order [Dkt. 35].) The Court held that Plaintiffs' Virginia law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), sections

---

[1] In ruling on a motion to dismiss, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[s]." Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

1

514(a) and 502(a), codified at 28 U.S.C. §§ 1144(a), 1132(a). (Memp. Op. at 8-17.) The Court also dismissed Plaintiffs' claim for equitable relief under ERISA section 502(a)(3)(B) as to then-Defendant Jane Farris, but held the claim was sufficient for Rule 12(b)(6) purposes as to Sandia. (Mem. Op. at 21-24.) The Court granted Plaintiffs leave to file a second amended complaint. (Order [Dkt. 35] at 1-2.) On October 14, 2014, Plaintiffs filed their second amended complaint, wherein they raise one claim for equitable relief under ERISA [Dkt. 36]. Sandia now moves to dismiss the second amended complaint in its entirety.

### B. Factual Background

The facts giving rise to this litigation remain unchanged. (See Mem. Op. at 1-4 (detailing the factual background of this case).) In short, Plaintiffs were former employees of Sandia, which is located in New Mexico. (2d Am. Compl. [Dkt. 36] ¶¶ 6, 8-9, 16.) During their employment, Plaintiffs accepted Sandia's offer to take a Special Leave of Absence ("SLOA") for a period of two years to work for the Central Intelligence Agency in Virginia as full-time employees while maintaining their connection to Sandia. (Id. at ¶¶ 10-14.) This SLOA period was renewed twice and Plaintiffs ultimately worked at the CIA for eight years before returning to full-time employment with Sandia. (Id. at ¶¶ 14-15.)

Under the terms of the SLOA agreement, Plaintiffs employment at Sandia was inactive during the eight-year period, but Plaintiffs continued to earn time-of-service credit with Sandia for purposes of future pension benefit calculations, so long as Plaintiffs returned to employment with Sandia after the SLOA expired. (2d Am. Compl. ¶¶ 10-13.) Plaintiffs returned to work at Sandia and shared their institutional knowledge of the CIA, which was very beneficial to Sandia. (Id. at ¶ 12.) Specifically, because of "information obtained from the plaintiffs, Sandia was able to develop a broadly integrated data analytics initiative that provided the basis for substantial revenue." (Id. at ¶ 47.)

After Plaintiffs retired, pension payments from Sandia initially included the bargained-for time-of-service credit during their eight-year SLOA period with the CIA. (2d Am. Compl. ¶ 17.) Eventually, however, Sandia decreased Plaintiffs' pension payments to reflect a reduced time-of-service credit that excluded the eight-year SLOA period because Plaintiffs were also accruing time-of-service credit for their federal government pension at the same time, which violated the non-duplication provision of Sandia's Retirement Income Plan ("the Plan"). (Id. at ¶¶ 19, 20, 36.) Sandia later amended the Plan to provide a pension amount for the SLOA period that was offset by the pension amount provided by the CIA. (Def.'s Mem. [Dkt.

3

38] at 6-7.)  After exhausting their administrative remedies with Sandia, Plaintiffs filed suit.

Plaintiffs now bring one claim for equitable relief under ERISA, 29 U.S.C. § 1132(a)(3)(B).  (2d Am. Compl. ¶¶ 25-51.)  Pursuant to the equitable remedy of estoppel, Plaintiffs ask the Court to prevent Sandia from excluding their bargained-for time-in-service credit for the eight-year period of the SLOA.  (Id. at 9.)  Specifically, Plaintiffs ask the Court to compel Sandia to (1) disgorge the full value of the benefit it received from Plaintiffs return to Sandia, (2) reimburse Plaintiffs for amounts expended in reliance on Sandia's false promises, (3) compensate or restore pension payments improperly withheld, and (4) make no future reductions in pension payments on the basis of reinterpreting the Plan.  (Id. at 9-10.)

Sandia moves to dismiss this matter again pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to strike the allegations in the second amended complaint that were previously dismissed by the Court.  (Def.'s Mem. at 5.)

## II. Standard of Review

When ruling on a Rule 12(b)(6) motion, the Court accepts as true all factual allegations contained in the complaint.  E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  These factual allegations must be sufficient, when taken as true, to

4

show a plausible claim for relief that is more than just conceivable or speculative. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). Stated differently, the facts as alleged in the complaint must "raise a reasonable expectation that discovery will reveal evidence of the alleged activity," US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 549, 554 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 556), meaning there are sufficient facts alleged to support an inference that plaintiff is entitled to the relief he seeks. Francis v. Giacomelli, 558 F.3d 186, 196-97 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citation omitted)).

### III. Analysis

Sandia now brings another Rule 12(b)(6) motion, its second, this time challenging Plaintiffs' claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B). Plaintiffs pled this claim for equitable relief in their first amended complaint, but Sandia only challenged its status as a "plan fiduciary" under this claim, and did not raise any of the arguments now pending in Sandia's second 12(b)(6) motion. (Compare Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' First Am. Compl. [Dkt. 21] at 24-25, with Def.'s Mem. in Supp. of Mot. to Dismiss. Pls.' Second Am. Compl. [Dkt. 38].) Stated differently, Sandia now raises

5

12(b)(6) arguments that were available but omitted from its earlier motion.

This inefficient practice is expressly barred by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); see also Flame S.A. v. Indus. Carriers, Inc., --- F. Supp. 2d ---, No. 2:13-cv-658, 2014 WL 3544847, at *4 (E.D. Va. July 17, 2014) (holding the defendant "must have placed all of its objections under 12(b)(6) in its first 12(b)(6) motion, if those defenses were available to it.") (citation omitted).

Regardless, the Court finds Sandia's substantive arguments unpersuasive for the following reasons.

Sandia argues that Plaintiffs' claim for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(B), should be dismissed for two reasons: First, Sandia contends relief under ERISA § 502(a)(3) is foreclosed because ERISA § 502(a)(1)(B) provides adequate relief. (Def.'s Mem. at 10-17.) Second, Sandia argues that even if Plaintiffs state a claim under ERISA § 502(a)(3), it should nonetheless be dismissed because the relief Plaintiffs seek is not available in equity

under that section of ERISA.  (Id. at 17-26.)  Both arguments fail.[2]

A civil action may be brought "by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Otherwise, a participant or beneficiary may also file suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  ERIRSA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(1)(B).  The former provision is colloquially known as ERISA's "recovery-of-benefits-due provision," while the latter is known as the "catch all provision."  CIGNA Corp. v. Amara, --- U.S. ---, 131 S. Ct. 1866, 1871 (2011).

In Amara, "the Supreme Court expanded the relief and

---

[2] As a preliminary matter, Sandia also asks the Court to strike Plaintiffs' factual allegations that were initially pled to support the state law claims in the first amended complaint, but are now pled again in the second amended complaint to support Plaintiffs' claim for equitable relief under ERISA. Sandia argues the allegations should be struck under Rule 12(f) of the Federal Rules of Civil Procedure as "redundant, immaterial, impertinent, or scandalous matter."  (Def.'s Mem. at 9-10.)  There is no basis for the Court to strike Plaintiffs' factual allegations.  Plaintiffs have not attempted to plead state law counts that were already dismissed.  Instead, Plaintiffs simply include the same factual allegations to now support their claim for equitable relief under ERISA.  Sandia's request to strike these allegations will be denied.

7

remedies available to plaintiffs asserting breach of fiduciary duty under Section 1132(a)(3) and therefore seeking make-whole relief such as equitable relief in the form of surcharge." McCravy v. Metro. Life Ins. Co., 690 F.3d 176, 180-81 (4th Cir. 2012) ("In sum, the portion of Amara in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)."). In suing Sandia for breach of fiduciary duty under the Plan, the Court cannot find that Plaintiffs' enforcement mechanism lies solely in ERISA § 502(a)(1)(B), nor can it find that the remedies they seek are foreclosed under ERISA § 502(a)(3).

Sandia's first argument misses the mark in light of Amara and McCravy. In Sandia's view, Plaintiffs complaint was more properly brought under ERISA § 502(a)(1)(B) because Plaintiffs simply seek to recover pension benefits that were supposedly due as a result of the eight-year SLOA period. (See, e.g., Def.'s Mem. at 14.) But that argument oversimplifies this litigation. Plaintiffs indeed seek to recoup the value of pension benefits they claim they are owed, but they also ask the Court for estoppel, or to be put "in the same position [they] would have been in had [Sandia's] representations been true." Amara, 131 S. Ct. at 1880. In other words, Plaintiffs ask for

8

equitable relief to not only disgorge any value Sandia improperly and unfairly received because of Plaintiffs' institutional knowledge of the CIA, but they also seek "make-whole relief" such that they would be in the same position had Sandia not denied term-of-service credit for the eight years of SLOA. McCravy, 690 F.3d at 181 (citing Amara, 131 S. Ct. at 1880) ("As the Supreme Court announced in Amara, 'surcharge,' i.e., 'make-whole relief,' constitutes 'appropriate equitable relief' under Section 1132(a)(3)."). This is equity in its purest form. Amara, 131 S. Ct. at 1879 (discussing equity's development of "a host of other 'distinctively equitable' remedies--remedies that were 'fitted to the nature of the primary right' they were intended to protect."). Thus, Sandia's first argument fails.

Sandia's second argument is also not persuasive. Sandia argues that Plaintiffs' seek relief that is unavailable under ERISA § 502(a)(3) and therefore the claim should be dismissed. (Def.'s Mem. at 17-26.) Sandia contends that payment of additional pension benefits under the Plan, disgorgement or restitution of any value received by Sandia, and reimbursement of relocation expenses are all legal remedies not properly awarded in equity under ERISA § 502(a)(3). (Id. at 17-18.)

This argument might have withstood criticism pre-Amara. But now, as Sandia acknowledges in its brief, "[t]he Supreme Court's decision in Amara arguably expanded the relief available to plaintiffs under ERISA § 502(a)(3) to include certain forms of monetary relief[.]" (Id. at 22.). Notably, the Supreme Court expressly recognized "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." Amara, 131 S. Ct. at 1880. Moreover, Sandia's second argument fails because Plaintiffs partially seek "relief in the form of monetary 'compensation' for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment[,]" in addition to other equitable relief, including estoppel as discussed above, which equity courts have always possessed the power to provide. Id. (citing Restatement (Third) of Trusts § 95, and Comment a (Tent. Draft No. 5, Mar. 2, 2009); J. Eaton, Handbook of Equity Jurisprudence §§ 211-212, at 440 (1901)); see also Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 357 (4th Cir. 2014) ("ERISA's fiduciary duties draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment.") (internal quotation marks and additional citations omitted). Thus, Plaintiffs have sufficiently stated a proper claim for equitable relief under ERISA.

Although the plaintiff in McCravy sought benefits under her daughter's life insurance policy, the circumstances are similar to those presented here. McCravy, 690 F.3d at 177-80. Ms. McCravy paid premiums on life insurance coverage for her daughter for approximately six years until she was tragically murdered. Id. at 177. After filing a claim for benefits, the insurance company initially denied the claim because her daughter had "aged out" and was no longer eligible under the policy, but nonetheless, the insurance company attempted to settle her claim by refunding the multiple years of premiums she had paid. Id. Ms. McCravy sued, pleading inter alia, breach of fiduciary duty and estoppel. Id. at 179. The district court held that Ms. McCravy's recovery was limited to the amount of the premiums wrongfully withheld, but acknowledged that her claims "present[ed] a compelling case for the availability of some sort of remedy for the breach of fiduciary duty above and beyond the mere refund of wrongfully retained premiums." Id. at 179. The Fourth Circuit reversed, and expanded the relief available in equity pursuant to Amara under ERISA § 502(a)(3). Id. at 183.

Here, just like in McCravy, "it was represented to Plaintiff[s] by Defendant" that they would continue to accrue time-of-service credit during the eight-year SLOA period as long as Plaintiffs returned to employment with Sandia. Id. at 178.

In fact, it is alleged that Plaintiffs moved across the country to work for the CIA in exchange for this continued time-of-service credit accrual, and when the SLOA period expired, resumed work at Sandia and shared their institutional knowledge of the CIA. "Nevertheless, per the complaint, unbeknownst to [Plaintiffs]," they were not eligible to ultimately receive pension payments that included credit for the SLOA period, due to a non-duplication provision in the Plan. Id. at 178. Without the equitable relief of surcharge and estoppel, "the stifled state of the law interpreting Section 1132(a)(3) would encourage abuse by fiduciaries . . . . [Indeed], fiduciaries would enjoy essentially risk-free windfall profits from employees who paid premiums [or otherwise acted] on, [or in exchange for], non-existent benefits[.]" Id. at 183. ERISA § 504(a)(3), 29 U.S.C. § 1132(a)(3), is designed to avoid such an inequitable outcome.

## IV. Conclusion

For the foregoing reasons, the Court will deny Sandia's motion to dismiss the second amended complaint.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| December 15, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |